[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15430
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00488-JEC-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARIEL BLANCO ARROYO-GOMEZ,
a.k.a. Blanco,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 19, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Ariel Blanco Arroyo-Gomez appeals his 180-month sentence for conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, 500 grams of methamphetamine, and less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A)(ii), (vii) and (b)(1)(D). Arroyo-Gomez contends that the district court erred by applying a two-level enhancement for his role in the offense as "an organizer, leader, manager, or supervisor." U.S.S.G. § 3B1.1(c). He argues that the government presented no evidence at his sentence hearing to support a finding that he acted in a supervisory or managerial capacity.

A district court's determination that a defendant is subject to a § 3B1.1 role enhancement is a finding of fact that we review only for clear error. United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005). The sentencing guidelines provide for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor" in the criminal activity. U.S.S.G. § 3B1.1(c). In assessing the defendant's role in the offense, the court should consider factors such as the exercise of decision-making authority, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing, and the degree of control or authority exercised over others. Id. § 3B1.1 cmt. n.4.

In the present case Special Agent Alex Ascencio testified at the sentence

2

hearing that recorded phone calls established that Arroyo-Gomez instructed co-conspirator Aaron Cruz to facilitate drug deals and help get customers. Also, Cruz called Arroyo-Gomez to get materials to "cut the drugs." In one particular call, Cruz asked Arroyo-Gomez whether he had a supply of drugs available for him. Arroyo-Gomez responded that he needed to cut the drugs, and he told Cruz to wait at his current location. Agent Ascencio testified about another conversation in which Arroyo-Gomez instructed Cruz to show a buyer a quarter kilogram of cocaine, emphasizing that the group "needed to get something out of it." Cruz's dependence on Arroyo-Gomez for a supply of drugs, materials to cut them, and instructions about selling them establishes Arroyo-Gomez's control or leadership over him, and "[t]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Perry, 340 F.3d 1216, 1217 (11th Cir. 2003) (alteration omitted).

The district court also heard testimony that Arroyo-Gomez made other arrangements for drug deals and negotiated prices, including setting the terms of a five-pound methamphetamine deal. That evidence supports the district court's finding that the § 3B1.1(c) enhancement was applicable. See United States v. Stanley, 24 F.3d 1314, 1323 (11th Cir. 1994) (holding that evidence that the defendant negotiated the price of the drugs and made arrangements for the drug

3

transaction was enough to establish that he had acted in a managerial capacity); see also United States v. Matthews, 168 F.3d 1234, 1249 (11th Cir. 1999) (explaining that "[i]n a drug distribution case . . . the management enhancement is appropriate for a defendant who arranges drug transactions, negotiates sales with others, and hires others to work for the conspiracy"). The district court did not clearly err by finding that the two-level enhancement applied to Arroyo-Gomez.

**AFFIRMED.**